No. 23-10179

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

LEBENE KONAN,

Plaintiff-Appellant,

v.

UNITED STATES POSTAL SERVICE, *et al.*,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Texas

**PETITION FOR REHEARING EN BANC**

BRIAN M. BOYNTON
 *Principal Deputy Assistant Attorney
 General*

LEIGHA SIMONTON
 *United States Attorney*

MARK B. STERN
MICHAEL SHIH
URJA MITTAL
 *Attorneys, Appellate Staff
 Civil Division, Room 7248
 U.S. Department of Justice
 950 Pennsylvania Avenue NW
 Washington, DC 20530
 (202) 353-4895*

## STATEMENT OF COUNSEL PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 35(B)(1)

This petition presents a question of exceptional importance to the administration and operations of the United States Postal Service (USPS).

The Postal Service delivers more than 400 million pieces of mail each day. The postal exception to the Federal Tort Claims Act (FTCA) shields the United States against any FTCA claim "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). The panel held that the postal exception does not cover claims involving an allegedly intentional refusal of the Postal Service to deliver mail, on the grounds that such claims involve neither the "miscarriage" nor the "loss" of mail.

The panel's holding conflicts with this Court's decision in *Ruiz v. United States*, 160 F.3d 273 (5th Cir. 1998) (per curiam), and with the First Circuit's decision in *Levasseur v. USPS*, 543 F.3d 23 (1st Cir. 2008) (per curiam). The panel's decision is also in significant tension with the Supreme Court's interpretation of the postal exception in *Dolan v. USPS*, 546 U.S. 481 (2006). If left in place, the panel's decision will subject the Postal Service to claims that have been barred by the postal exception since the FTCA was enacted. Rehearing en banc is therefore necessary to conform the law of this Circuit to Supreme Court precedent, to secure and maintain uniformity of this Court's decisions, and to restore the postal exception to its proper scope.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE ISSUE ................................................................................... 2

STATEMENT OF THE CASE .................................................................................... 2

ARGUMENT ............................................................................................................... 4

The Panel's Decision Conflicts With Circuit Precedent, Creates An Inter-
    Circuit Split, And Departs From Supreme Court Guidance In Mistakenly
    Narrowing The Postal Exception. .......................................................................... 4

CONCLUSION ........................................................................................................... 11

CERTIFICATE OF COMPLIANCE

OPINION

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ................................................................................................ 6

*Dolan v. U.S. Postal Service*,
  546 U.S. 481 (2006) ................................................................... 1, 7, 8, 9, 10

*Levasseur v. U.S. Postal Service*,
  543 F.3d 23 (1st Cir. 2008) ..................................................... 1, 6, 7, 8, 10

*Molzof v. United States*,
  502 U.S. 301 (1992) ............................................................................... 2, 10

*Ruiz v. United States*,
  160 F.3d 273 (5th Cir. 1998) ................................................................ 1, 7, 10

*Russello v. United States*,
  464 U.S. 16 (1983) ................................................................................................ 6

*Southwest Airlines Co. v. Saxon*,
  596 U.S. 450 (2022) ............................................................................................. 6

*United States v. Wong Kim Bo*,
  472 F.2d 720 (5th Cir. 1972) ........................................................................... 6

**Statutes:**

28 U.S.C. § 1346(b)(1) ........................................................................................... 2

28 U.S.C. § 2674 ..................................................................................................... 2

28 U.S.C. § 2680(b) ........................................................................................ 1, 2, 4, 6

**Rule:**

Fed. R. App. P. 35 ................................................................................................ 1

**Other Authorities:**

Order of Dismissal, *Ruiz v. United States*, No. 96-cv-04286
  (S.D. Tex. Sept. 25, 1997), Dkt. No. 17 .......................................................... 7

Oxford English Dictionary (1933) ...................................................................... 4

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) .................................. 6

USPS, *Domestic Mail Manual—507 Mailer Services*,
  https://perma.cc/8PCJ-77MW ........................................................................ 9

USPS, *Postal Facts*, https://perma.cc/4A9H-2WUK ...................................... 10

Webster's Second New International Dictionary (1942) .......................... 4, 5, 6

# INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 35, defendants respectfully seek rehearing to resolve a question of exceptional importance concerning the postal exception to the Federal Tort Claims Act (FTCA). That exception shields the United States against "[a]ny [FTCA] claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). The panel held that the exception does not cover any claim involving an allegedly intentional refusal of the United States Postal Service (USPS) to deliver mail on the grounds that such claims involve neither the "miscarriage" nor the "loss" of mail. That holding cannot be reconciled with this Court's decision in *Ruiz v. United States*, 160 F.3d 273 (5th Cir. 1998) (per curiam) and creates a conflict with the First Circuit's decision in *Levasseur v. USPS*, 543 F.3d 23 (1st Cir. 2008) (per curiam). And it is, at a minimum, in significant tension with the Supreme Court's interpretation of the postal exception in *Dolan v. USPS*, 546 U.S. 481 (2006). The Postal Service delivers over 400 million pieces of mail each day, and the panel decision opens the door to claims that have been barred since the enactment of the FTCA. Rehearing en banc is necessary to conform the law of this Circuit to Supreme Court precedent, to secure and maintain uniformity of this Court's decisions, and to restore the postal exception to its proper scope.

## STATEMENT OF THE ISSUE

Whether the panel erred in concluding that the FTCA postal exception does not bar plaintiff's claims as arising out of the loss or miscarriage of letters or postal matter.

## STATEMENT OF THE CASE

The FTCA waives the sovereign immunity of the United States and creates a cause of action "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b)(1); *see id.* § 2674. This waiver is subject to several exceptions, which Congress adopted to "protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). One such exception is the postal exception, which bars "[a]ny [FTCA] claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b).

Plaintiff Lebene Konan owns two rental properties in Texas. Konan alleges that USPS and two USPS employees intentionally refused to deliver mail to those properties because they did not "like the idea that a black person own[ed] them," Op. 2 (alteration in original) (quotation marks omitted), and instead marked mail directed to those properties as "undeliverable," *id.* Konan further alleges that USPS

continued to refuse to deliver mail to her properties despite the USPS Inspector General "instruct[ing] that mail be delivered" to her and her tenants. *Id.*

Konan sued the United States under the FTCA for nuisance, tortious interference with prospective business relations, conversion, and intentional infliction of emotional distress. *See* Op. 3. The district court dismissed those claims for lack of subject matter jurisdiction under the postal exception. *See* Op. 3-4. A panel of this Court reversed, holding that the postal exception "do[es] not encompass the intentional act of not delivering the mail." Op. 8. That holding, the panel recognized, is "at odds with" decisions of other courts of appeals. *Id.*

The panel held that Konan's FTCA claims did not arise out of the "miscarriage" of mail, because a miscarriage occurs only when USPS "mistakenly delivers the mail to a third party" as opposed to the intended addressee. Op. 7 (emphasis omitted). The panel determined that Konan's mail had not been miscarried, because USPS had not delivered the mail to a third party but had instead marked the mail as "undeliverable." *Id.* The panel further held that Konan's claims did not arise out of the "loss" of mail because the term "loss" "carr[ies] the sense that the loss is unintentional," Op. 6 (emphasis omitted), and the complaint alleges "a continued, intentional effort not to deliver Konan's mail over a two-year period," *id.*[1]

---

[1] Konan also sued the two USPS employees in their individual capacities for denying her the equal protection of the laws. *See* Op. 3. The panel affirmed the

*Continued on next page.*

# ARGUMENT

## THE PANEL'S DECISION CONFLICTS WITH CIRCUIT PRECEDENT, CREATES AN INTER-CIRCUIT SPLIT, AND DEPARTS FROM SUPREME COURT GUIDANCE IN MISTAKENLY NARROWING THE POSTAL EXCEPTION.

**A.** The postal exception to the FTCA bars "[a]ny claim arising out of the loss, miscarriage, or negligent transmission" of mail. 28 U.S.C. § 2680(b). The claim that USPS intentionally failed to deliver mail to its intended destination involves both miscarriage and loss and therefore falls squarely within the scope of the exception. At the time of the FTCA's enactment, "miscarriage" was defined as the "[f]ailure (of something sent) to arrive" or the "[f]ailure to carry properly; as, miscarriage of goods." Op. 7 (alterations in original) (quoting *Miscarriage*, Webster's Second New International Dictionary 1568 (1942)). The Oxford English Dictionary at the time of the FTCA's enactment similarly defined "miscarriage" as "[t]he failure (of a letter, etc.) to reach its destination" or "[f]ailure to carry or convey properly." *Miscarriage*, Oxford English Dictionary 497 (1933); *see also id.* at 498 (defining "miscarry" as "[o]f a letter, etc.: [t]o fail to reach its proper destination; to get into wrong hands"). None of these definitions limited miscarriages to unintentional failures to arrive or failures to carry properly. And under all of these definitions, an allegation that mail has been intentionally withheld from its intended recipient would be an allegation of

---

district court's dismissal of those individual claims, *see* Op. 11, and that aspect of the panel's decision is not at issue here.

miscarriage, because the mail would have failed to arrive at or be carried to its proper destination.

The panel reasoned that "there can be no 'miscarriage' where there is no attempt at carriage." Op. 7. Per plaintiff's allegations, however, the Postal Service undertook to carry the mail and did so. On plaintiff's allegations, the Postal Service collected the mail from the sender, transported that mail to a processing facility, and delivered that mail to plaintiff's local post office. Plaintiff's claims are based on her allegation that the mail failed to reach her. But that would be equally the case if the letter were lost or misplaced. And in both cases, the failure of the mail to reach the addressee is "miscarriage." The only difference is that in one case the loss or misplacement is allegedly intentional. The postal exception applies equally in either case, under the plain text of the statute.

Konan's claims are also independently covered by the postal exception because they arise from the "loss" of mail. "Loss" is not limited to loss resulting from negligence. The panel quoted a definition of "loss" as the "'[a]ct or fact of losing … or suffering deprivation … [or] unintentional parting with something of value; as, the loss of property' and 'that which is lost; of which anything is deprived or from which something is separated.'" Op. 5 (first, second, and third alterations in original) (quoting *Loss*, Webster's Second New International Dictionary, *supra*, at 1460). The same definition makes clear, however, that loss is "usually"— not uniformly—

5

"unintentional[]." *Id.* (quoting Webster's Second New International Dictionary, *supra*, at 1460).

The remainder of the statutory text confirms that there is no basis for excluding intentional misconduct from the scope of the postal exception. The postal exception applies to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). Only the third of these categories is limited to negligent conduct. The first two categories—loss and miscarriage—are not so limited, and this Court should properly presume that Congress chose not to limit the first two categories based on intent. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("We normally presume that, where words differ as they differ here, "'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'""); *Russello v. United States*, 464 U.S. 16, 23 (1983) (explaining that where Congress "includes particular language in one section of a statute but omits it in another," "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))); *cf. Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) ("To discern th[eir] ordinary meaning, … words "'must be read'" and interpreted "'in their context,'" not in isolation."); Antonin Scalia & Bryan A. Garner, *Reading Law* 152 (2012) ("When the syntax involves something

6

other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

**B.** The panel's decision conflicts with this Court's decision in *Ruiz v. United States*, 160 F.3d 273 (5th Cir. 1998) (per curiam), the First Circuit's decision in *Levasseur v. USPS*, 543 F.3d 23 (1st Cir. 2008) (per curiam), and the Supreme Court's reasoning in *Dolan v. USPS*, 546 U.S. 481 (2006).

The panel's decision is squarely at odds with this Court's decision in *Ruiz*, which applied the postal exception to a claim that Bureau of Prisons (BOP) officials "fail[ed] to deliver to [the plaintiff] incoming mail notifying him of final judgments." 160 F.3d at 274. Although this Court's decision in *Ruiz* does not specifically describe the conduct as intentional, the district court's fuller description makes clear that the plaintiff claimed that BOP officials had "interfere[d]" with his mail. Order of Dismissal, *Ruiz v. United States*, No. 96-cv-04286 (S.D. Tex. Sept. 25, 1997), Dkt. No. 17 at 1. The panel here mistakenly sought to distinguish *Ruiz* on the ground that it "involved a third-party intermediary in the form of the prison officials, unlike here, where Konan alleges that USPS itself intentionally failed to deliver her mail." Op. 6. But the involvement of a "third-party intermediary" had no bearing on whether the postal exception applied in *Ruiz*. *Ruiz* held that an intentional failure to deliver the mail to the plaintiff was barred by the postal exception, and on the court's reasoning,

the exception would extend equally to the acts of prison officials and of postal service employees.

As the panel recognized, its decision also creates a conflict with the First Circuit's decision in *Levasseur*. Examining the statutory text, the *Levasseur* court explained that "the fact that the word 'negligent' only modifies the word 'transmission' indicates that intentional acts of 'loss' and 'miscarriage' are also covered." 543 F.3d at 24. The First Circuit accordingly held that the postal exception covered a claim that a partisan postal employee intentionally stole political campaign flyers to prevent them from being delivered to voters before a municipal election. *Id.* at 23-24. The "nondelivery … of sensitive materials," the First Circuit held, "falls squarely within" the postal exception. *Id.* at 24 (alteration in original) (quoting *Dolan*, 546 U.S. at 489).

The First Circuit's decision accords with the statutory text and with the Supreme Court's explication of the postal exception in *Dolan*, where the Supreme Court construed the meaning of the exception's "negligent transmission" prong by reference to the meaning of "miscarriage" and "loss." 546 U.S. at 487. "[B]oth those terms," the Supreme Court explained, "refer to failings in the postal obligation to deliver mail in a timely manner to the right address." *Id.* And the terms reflect Congress's "inten[tion] to retain immunity[] … for injuries arising, directly or consequentially, because mail … fails to arrive at all." *Id.* at 489. "Illustrative

instances of the exception's operation," the Supreme Court explained, were claims for "personal or financial harms arising from nondelivery … of sensitive materials or information (*e.g.*, medicines or a mortgage foreclosure notice)." *Id.* That describes Konan's claims exactly. *See* Op. 2-3 ("Konan claims that she lost expected rental income when several tenants moved and that she and her remaining tenants did not receive important mail including 'doctor's bills, medications, credit card statements, car titles and property tax statements.'"). Thus, the panel's decision in this case is at odds with the reasoning of *Dolan*.

The panel sought to reconcile its decision with *Dolan* by emphasizing the Supreme Court's statement that mail is "miscarried if it goes to the wrong address." Op. 7 (quoting *Dolan*, 546 U.S. at 487). But the Supreme Court did not suggest that mail is miscarried only if it is delivered to the incorrect address. Rather, the Supreme Court characterized both the miscarriage and the loss prongs of the exception as more broadly covering "failings in the postal obligation to deliver mail in a timely manner to the right address." *Dolan*, 546 U.S. at 487. And the Supreme Court specifically pointed to claims involving the "nondelivery" of mail as falling within the heartland of the exception. *Id.* at 489. Moreover, even on the panel's reasoning, the effect of marking mail "undeliverable" is likely to result in a return to sender—that is, delivery to the wrong address. *See* USPS, *Domestic Mail Manual—507 Mailer Services*, at 1.4.1, https://perma.cc/8PCJ-77MW.

9

**C.**  If permitted to stand, the panel's holding would substantially undermine the postal exception, which Congress enacted to "protect" the core federal function of mail delivery "from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992).  The Postal Service delivers more than 400 million pieces of mail daily.  *See* USPS, *Postal Facts*, https://perma.cc/4A9H-2WUK.  Construing the postal exception to exclude claims based on intentional acts would permit potential litigants to bring claims alleging intentional miscarriage or loss, or to recast their claims regarding lost mail as ones for intentional miscarriage or mail theft, with the aim of circumventing the FTCA's jurisdictional bar.  This would undermine the purpose of the exclusion that Congress carefully crafted.

In sum, the panel decision presents an issue of exceptional importance and conflicts with this Court's decision in *Ruiz*, the First Circuit's decision in *Levasseur,* and the Supreme Court's reasoning in *Dolan*.  Rehearing en banc is warranted.

10

## CONCLUSION

For these reasons, the Court should rehear this case en banc.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

LEIGHA SIMONTON
*United States Attorney*

MARK B. STERN
MICHAEL SHIH

/s/ Urja Mittal
URJA MITTAL
*Attorneys, Appellate Staff
Civil Division, Room 7248
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-4895*

MAY 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A), because it contains 2,587 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Urja Mittal*
URJA MITTAL

# United States Court of Appeals for the Fifth Circuit

---

No. 23-10179

---

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2024

Lyle W. Cayce
Clerk

Lebene Konan,

> Plaintiff—Appellant,

*versus*

United States Postal Service; Raymond Rojas, *also known as* Ray; Jason Drake; United States of America,

> Defendants—Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-139

---

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

Lebene Konan claims that United States Postal Service employees did not deliver her mail for two years in violation of the Federal Tort Claims Act and her equal protection rights. The district court dismissed her claims for lack of subject matter jurisdiction and for failure to state a claim. For the following reasons, we AFFIRM IN PART and REVERSE IN PART.

No. 23-10179

# I

Konan alleges that the United States Postal Service (USPS), and two of its employees, Jason Rojas and Raymond Drake, intentionally withheld and refused to deliver mail to two residences that she owned and leased to individual tenants in Euless, Texas because they did not "like the idea that a black person own[ed]" them.

Konan owns two rental properties, the "Saratoga Residence" and the "Trenton Residence." The mailboxes at the Saratoga Residence are centrally located in a single, metal structure. Each residence is provided with one key to access the mailbox. Konan possessed the key to the Saratoga Residence's mailbox and would daily distribute the mail to each tenant. Konan also received "business mail" at the Saratoga Residence and stayed there from "time to time," but it was not her permanent home.

In May 2020, Rojas allegedly changed the lock on the mailbox at the Saratoga Residence without her permission. According to Konan, Rojas did not change the lock on mailboxes belonging to any other residence owner on his route or refuse to deliver mail to similar multi-family residences owned by white individuals. When Konan went to the Post Office to inquire as to why the lock to her mailbox was changed without notice or consent, she was advised that USPS would not deliver any mail to the Saratoga Residence until its ownership was "investigated by USPS's Inspector General and conclusively established."

USPS delivered no mail to the Saratoga Residence for the next two to three months. When USPS confirmed that Konan owned the property and the Inspector General instructed that mail be delivered to the Saratoga Residence, Rojas and Drake allegedly refused to deliver Konan's or her tenants' mail, instead marking it as undeliverable. As a result, Konan claims that she lost expected rental income when several tenants moved and that she

and her remaining tenants did not receive important mail including "doctor's bills, medications, credit card statements, car titles and property tax statements."

The situation continued to escalate. In April 2021, Konan alleges that Rojas stopped delivering mail to her Trenton Residence, because Rojas thought that something "nefarious" was afoot.[1] Konan alleges that Rojas and Drake engaged in this behavior because she is African American, and despite repeatedly advising USPS of this conduct, nothing has been done to correct it. "To this day," Konan alleges that "Rojas and Drake continue to refuse to deliver properly-addressed mail" to both Residences.

Konan asserts common law tort claims against USPS and the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (FTCA), including nuisance, tortious interference with prospective business relations, conversion, and intentional infliction of emotional distress. She also asserts claims for denial of equal protection of law pursuant to 42 U.S.C. §§ 1981 and 1985 against Rojas and Drake.

USPS and the United States moved to dismiss Konan's complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Rojas and Drake moved to dismiss for failure to state a claim under Rule 12(b)(6).

The district court granted the motions to dismiss, concluding that her FTCA claim failed for lack of subject matter jurisdiction because it was barred by sovereign immunity based on the postal-matter exception under 28

---

[1] Generally, a USPS employee, with proper notice, may withhold a resident's mail and require proof of identity if the employee feels threatened or believes there is illegal activity underway. *See* 39 U.S.C. § 3003. There is no record that USPS either filed the required order or gave notice of such a § 3003 claim being filed at either of Konan's residences.

No. 23-10179

U.S.C. § 2680(b).  It likewise determined that Konan had failed to state a viable equal protection claim against Rojas and Drake.

On appeal, Konan concedes that USPS is the appropriate defendant in this FTCA action but disputes whether sovereign immunity shields it from liability.[2]  Konan also challenges the district court's conclusion that she failed to state a valid equal protection claim against Rojas and Drake.

## II

We review de novo the application of sovereign immunity.  *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022); *see also Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014).  When reviewing a motion to dismiss for failure to state a claim, we apply de novo review and "construe the complaint in the light most favorable to the plaintiffs." *Jones v. Admin. of the Tulane Educ. Fund,* 51 F.4th 101, 109 (5th Cir. 2022) (internal citation omitted).

## III

### A. FTCA

This case raises an issue of first impression in our circuit: whether the postal-matter exception to the FTCA's immunity waiver applies to intentional acts.  The FTCA authorizes plaintiffs to obtain compensation for the negligent or wrongful acts or omissions of the government and its employees in limited circumstances.  It nevertheless contains several exceptions that categorically bar plaintiffs from recovering damages.  *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *United States*

---

[2] *See Walters v. Smith*, 409 F. App'x 782, 783 (5th Cir. 2011) ("It is well established that FTCA claims may be brought against only the 'United States,' and not the agencies or employees of the United States.").

*v. Mitchell*, 463 U.S. 206, 212 (1983). The postal-matter exception, at issue here, retains sovereign immunity for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C.§ 2680(b); *Dolan*, 546 U.S. at 485 ("[T]he United States may be liable if postal workers commit torts under local law, but not for claims defined by the [postal-matter] exception.").

But § 2680(b)'s plain language does not shield against all failures to deliver mail; it preserves immunity only in the limited situations outlined by its terms. The district court held that Konan's claims were precluded by sovereign immunity because the claims arose out of a "loss" or "miscarriage." We disagree. This case does not fall into one of those limited situations. As discussed in detail below, there was no "loss" of mail because the mail was not destroyed or misplaced by unintentional action. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 487 (2006). Likewise, there was no "miscarriage" because there was no attempt at a carriage. *Id.* Finally, the postal workers' actions were intentional and thus cannot constitute a "negligent transmission." *Birnbaum v. United States*, 588 F.2d 319, 328 (2d Cir. 1978). We address each in turn.

### 1. *"Loss"*

We begin with the definition of loss. To define "loss," USPS points to the definition in *Webster's Second New International Dictionary*, published in 1942, shortly before the 1946 enactment of the FTCA and the postal-matter exception. Webster's Second New International Dictionary 1460 (1942 ed.). *Webster's* defines "loss" as the "[a]ct or fact of losing ... or suffering deprivation ... unintentional parting with something of value; as, the loss of property" and "that which is lost; of which anything is deprived or from which something is separated, usually unintentionally and to disadvantage." *Id.* (emphasis omitted). And in *Dolan*

*v. United States Postal Service*, the Supreme Court defined "loss" as mail that is "destroyed or misplaced" by USPS. 546 U.S. at 487. Both definitions carry the sense that the loss is *unintentional*. And they square with the plain meaning of loss—no one intentionally loses something. Here, there are no allegations that Konan's mail was destroyed or that it was misplaced by unintentional action. Instead, the facts present a continued, intentional effort not to deliver Konan's mail over a two-year period. Therefore, Konan's claims cannot be characterized as a "loss," as defined in either the contemporaneous dictionary definition or *Dolan*.

USPS relies on two circuit cases decided before *Dolan* to argue that the postal-matter exception applies because there was a "loss." Both are distinguishable. The first is *Ruiz v. United States*, 160 F.3d 273 (5th Cir. 1998). There, a pro se incarcerated plaintiff argued that prison officials failed to deliver his mail in violation of the FTCA. *Id.* at 274. *Ruiz* involved a third-party intermediary in the form of the prison officials, unlike here, where Konan alleges that USPS itself intentionally failed to deliver her mail. *Id.* Thus, *Ruiz* is inapposite.

Likewise, *Marine Insurance v. United States,* 378 F.3d 812 (2d Cir. 1967) is unpersuasive. There, mail stolen in regular transit triggered the postal-matter exception's "loss" provision. *Id.* at 813. Here, Konan's mail was not stolen in transit. Instead, USPS never transmitted it to her address in the first place. Konan's damages arose from USPS's *intentional* failure to carry mail to her properties and thus do not constitute a "loss."

### 2. *"Miscarriage"*

We next consider whether USPS's actions constitute a "miscarriage." USPS contends that under a plain reading of § 2680(b), the failure to deliver Konan's mail constituted a miscarriage and thus her suit is barred.

To define "miscarriage," USPS looks again to the definition provided in *Webster's Second New International Dictionary*. *Webster's* defines "miscarriage" as a "[f]ailure (of something sent) to arrive" or a "[f]ailure to carry properly; as, miscarriage of goods." Webster's Second New International Dictionary 1568 (1942 ed.) (emphasis omitted). In *Dolan*, the Supreme Court opined that mail is "miscarried if it goes to the wrong address," and that the term "refer[s] to failings in the postal obligation to deliver mail in a timely manner to the right address." 546 U.S. at 487. Under either definition, a carriage *precedes* the "miscarriage." In other words, there can be no "miscarriage" where there is no attempt at carriage. Where USPS intentionally fails or refuses to deliver mail to designated addressees, and never *mistakenly* delivers the mail to a third party, the mail is not "miscarr[ied]," as it was not carried at all. Konan's claims are not barred because no miscarriage occurred.

### 3. *"Negligent transmission"*

Finally, we turn to "negligent transmission." This phrase only covers "negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address." *Dolan*, 546 U.S. at 486. When the Supreme Court interpreted this term in *Dolan*, it applied the associated-words canon and determined that "loss" and "miscarriage" "limit the reach of 'transmission.' '[A] word is known by the company it keeps—a rule that is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.'" *Id.* Thus, "negligent transmission" does not sweep so broadly as to encompass "injuries that happen to be caused by postal employees but involve neither failure to transmit mail nor damage to its contents." *Id.* at 487.

Here, Rojas and Drake *intentionally* chose not to deliver mail to Konan and her tenants. They marked it undeliverable and returned to sender even

after they were instructed to deliver the mail by the Inspector General. Because Konan's damages arise from USPS's intentional failure to transmit mail to her and her tenants, "negligent transmission" does not apply to Konan's claim and sovereign immunity does not apply.

Because the conduct alleged in this case does not fall squarely within the exceptions for "loss, miscarriage, or negligent transmission," sovereign immunity does not bar Konan's FTCA claims.

Our determination that the intentional conduct in this case is not covered by the postal-matter exception puts us at odds with some of our sister circuits. *See Levasseur v. U.S. Postal Serv.*, 543 F.3d 23, 23-24 (1st Cir. 2008) (determining that the postal-matter exception applied where an employee stole campaign flyers and refused to deliver them until after the election); *C.D. of NYC, Inc. v. USPS*, 157 F. App'x 428, 429 (2d Cir. 2005) (determining the postal-matter exception applied where a diamond store employee conspired with USPS employees to steal jewelry); *Benigni v. United States*, 141 F.3d 1167, 1167 (8th Cir. 1998) (determining the postal-matter exception applied where USPS intentionally withheld his mail from home delivery).[3] With respect to these courts, we hold that the terms "loss," "miscarriage," and "negligent transmission" do not encompass the intentional act of not delivering the mail at all.

## B. Equal Protection Claim

---

[3] The D.C. Circuit has favorably cited district court cases that conclude that "miscarriage" does not encompass intentional acts. *See Lopez v. Postal Regul. Comm'n*, 709 F. App'x 13, 15-16 (D.C. Cir. 2017) (citing *Colbert v. USPS*, 831 F.Supp.2d 240, 243 (D.D.C. 2011) ("In th[e] narrow window of intentional mis-transmission, [the Postal Service] is not entitled to sovereign immunity.") and *LeRoy v. U.S. Marshal's Serv.*, 2007 WL 4234127, at *1 n.2 (E.D. La. 2007) (noting that a postal employee's "refusal to deliver plaintiff's mail to him was an intentional act," not "'the loss, miscarriage, or negligent transmission of letters or postal matter'")).

Next, Konan appeals the district court's dismissal of her § 1981 and § 1985 claims against Rojas and Drake in their individual capacities. The district court dismissed those claims for failure "to state a viable equal protection claim." The court also found that "the intracorporate-conspiracy doctrine bars Section 1985 claims against individuals employed by the same agency." We agree.

### *1. Section 1981*

Section 1981 provides the right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). These rights "are protected against impairment by nongovernmental discrimination and impairment *under color of State law*." § 1981(c) (emphasis added). We have consistently found that federal employees acting "under color of State law" are protected from liability even if there are "specific allegations of defamation or of potentially criminal activities." *Bolton v. United States*, 946 F.3d 256, 262 (5th Cir. 2019) (quoting *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018)); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 945 n.3 (1982).

The following elements must be met for a successful § 1981 claim: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

Here, Konan is African American and thus satisfies the first element. Beyond that, however, her allegations fall short. Specifically, no facts support her assertion that Rojas and Drake continued to deliver mail to any similarly situated white property owners while denying her delivery of mail. *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201–02 (5th Cir. 2020); *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000). Nor does Konan allege that

the discrimination concerns her right to any of the enumerated provisions of § 1981(a).[4]  Therefore, Konan fails to state a § 1981 claim, and she does not explain how amending the complaint would address the deficiencies in her argument.

### 2. Section 1985(3)

Section 1985(3) imposes liability on "two or more persons in any State or Territory [who] conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). We have consistently held that § 1985(3) does not apply to federal actors. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978).

While Konan is correct that *Mack*'s holding has been widely questioned, it has not been overturned.  *Cantu v. Moody*, 933 F.3d 414,419 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 112 (2020) (stating that *Mack* has not "aged well" but our circuit holds that § 1985(3) does not apply to federal actors); *Carpenters v. Scott*, 463 U.S. 825, 828 (1983) (applying § 1985(3) and finding there was no animus, so it was inapplicable to the federal actors); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865-69 (2017) (applying § 1985(3) to protect federal officers).

Konan contends that we should ignore this circuit's precedent in *Mack* and apply the Supreme Court's decision in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), which pre-dates *Mack* by several years. *Mack*, 575 F.2d at 488. However, absent a Supreme Court decision or our court sitting en banc and providing an "intervening contrary or superseding decision," we "cannot

---

[4] The enumerated rights of the statute include: "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

overrule a prior panel's decision." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

Furthermore, as the district court noted, even if § 1985(3) applied to federal actors, Konan's claim is barred by the "intracorporate-conspiracy doctrine, which precludes plaintiffs from bringing conspiracy claims [] against multiple defendants employed by the same governmental entity." Konan also claims that the intracorporate-conspiracy doctrine does not bar her claim because Rojas and Drake were conspiring to commit a criminal act against Konan outside of their official duties. However, we have consistently held that an agency and its employees are a "single legal entity which is incapable of conspiring with itself." *Thornton v. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013) (quoting *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998)); *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (holding "a corporation cannot conspire with itself any more than a private individual can" quoting *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)).

Therefore, the district court correctly concluded that Konan's § 1981 and § 1985(3) equal protection claims fail.

## IV.

Accordingly, we REVERSE the judgment of the district court as to Konan's FTCA claim and REMAND for further proceedings consistent with this opinion. We AFFIRM the district court's dismissal of Konan's equal protection claims.